# Exhibit 1

---

Certified translation from the German language

---

REPUBLIC OF AUSTRIA
Superior Court Salzburg

**5 Cg 36/09d**

Rudolfsplatz 2
P.O. Box 522
A-5010 Salzburg
Austria
Tel: [+43] 5-7601-233

To any Court
or any other authority
competent for
**112 S. 10th Street
Wilmington, NC 28401**

**In the matter of:**

**Plaintiff**
Elsa Weiss, represented by the
procurator Erwin Wallinger
Obergaeu 232
5440 Golling an der Salzach
Austria

**represented by:**
Andreas WIMMER, LL.M., attorney-at-law,
Kuffergasse 1
A-5400 Hallein/Austria
Tel: +43-6245/88 6 44

**Defendant**
Franz Schachl
D-O-B Sep. 11, 1950
Markt 70
5441 Abtenau/Austria

**represented by:**
Dr. Peter JESCH, attorney-at-law
Reichenhallerstrasse 5
5020 Salzburg/Austria
Tel: +43-662-84-85-83-0

for:       EUR 114,194.00 plus costs (other claim – general civil matter)

The undersigned court requests legal assistance.

Superior Court Salzburg - 2 -

At the Superior Court Salzburg there is a civil dispute pending between the plaintiff Elsa Weiss, represented by the procurator Erwin Wallinger, represented by Andreas WIMMER, LL.M., attorney-at-law, vs. the plaintiff Franz Schachl, represented by Dr. Peter JESCH, attorney-at-law, for EUR 114,194.00 plus costs.

The plaintiff demands of plaintiff with her legal action dated 02-19-2009 the payment of EUR 114,194.00 and stipulates as follows:

The plaintiff Elsa Weiss, D-O-B 01-16-1922, has received the inheritance of her husband Johann Weiss, who had passed away on 10-31-2006, which resulted in an amount of EUR 105,817.67 for her benefit.

The defendant had a special power-of-attorney by the plaintiff, which was limited to the completion and representation in all probate matters (Exhibit ./D). Contrary to this special power of attorney, the defendant has used this amount by granting his son, i.e. the great-nephew of the plaintiff, Alexander Otto Schachl, a loan on his own, meaning without authorization and approval by the plaintiff, in the amount of USD 100,000.00. According to the loan agreement interest in the amount of 6% APR was payable and the repayment of the principal was due on 12-15-2014, thus at a time when the plaintiff would be almost 93 years of age (Exhibit ./C). The plaintiff would have no advantage of this loan, since there was a danger that she would not live to see it repaid. Furthermore, Alexander Schachl did not provide any security as part of the loan agreement and this was not even required by the defendant, which is unusual given the amount of the loan. Furthermore the type of loan chosen by the plaintiff included a completely incalculable currency risk. The difference between the USD 100,000 and the amount of EUR 105,817.67 was never given to the plaintiff. Based on

Superior Court Salzburg                                    - 3 -

the interest on the loan amount since 10-31-2006, an amount of EUR 114,194.00 was due upon demand of plaintiff's representative dated 10-20-2008 as per 10-30-2008, but it was never paid.

The defendant denies the claim of the action both on legal grounds and regarding the amount, he requests the action to be denied and states that the loan to the great-nephew of the plaintiff was granted at her explicit request. Therefore there was no obligation to the best-possible conditions from the proceeds of the inheritance. Since the plaintiff had a very close relationship throughout their lives, she wanted to provide him with support, particularly since an interest rate was agreed that would have been better than for domestic savings accounts.

The special power-of-attorney granted by the plaintiff to the defendant on 04-24-2007 has specifically authorized him to dispose of funds and payments-in-kind of the plaintiff. The defendant has handed the difference to the plaintiff in cash.

The plaintiff responded thereto that she did not grant the plaintiff power-of-attorney for monies received from the probate proceedings. The defendant made himself scarce after the probate proceedings had been completed and did certainly not grant this loan at her specific request to her great-nephew (without any securities and without covering possible risks of inflation). The plaintiff did not have a close relationship to her great-nephew, since it was a long time since she had seen him prior to the unauthorized granting of the loan by the defendant. Even though a payment was supposed to have been made by the end of 2008, Alexander Schachl had made no such payment.

There was no approval of such a business transaction by the plaintiff. The difference was not paid to her in cash.

Superior Court Salzburg                          - 4 -

Finally, there was no provision for a place of venue [in the loan agreement], therefore legal action has to be brought in the United States of America.

Therefore there is the respectful **request** to subpoena and question

> **Alexander SCHACHL**
> **112 S. 10th Street**
> **Wilmington, NC 28401**
> **USA**

as a witness based on the stipulations by the above-mentioned parties under penalty of perjury and with consideration of the prohibition of proofs according to § 320 of the Austrian Code of Civil Procedure as well as to be questioned without penalty of perjury, considering the rights to which the witness is entitled to according to §§ 321-323 of the Austrian Code of Civil Procedure, regarding the attached list of questions.

A copy of the relevant provisions of the Austrian Code of Civil Procedure is attached.

It is respectfully requested that the following representatives of the parties be notified of the date of questioning in order to enable their participation in the questioning:

1.)   Andreas WIMMER, LL.M., attorney-at-law
      Kuffergasse 1, A-5400 Hallein, Austria
      Tel: +43-6245/88 6 44

2)    Dr. Peter JESCH, attorney-at-law
      Reichenhallerstrasse 5
      A-5020 Salzburg, Austria
      Tel: +43-662-84-85-83-0

Superior Court Salzburg                                   - 5 -

Attachments:

./A    Questionnaire

./B    Excerpt of the Austrian Code of Civil Procedure

./C    Loan Agreement dated May 2007

./D    Special power-of-attorney dated 04-24-2007


We thank you in advance for taking care of this request.

Respectfully submitted,


Superior Court Salzburg

Dept. 5, dated 10-14-2009


[signature; illegible]

Dr. Helmut Zoettl

Judge

Superior Court Salzburg

[round seal of:]

Superior Court Salzburg

-------------------------------------------------------------------------------------------------------------

With reference to my official oath I herewith certify that the above is a true and correct
translation of the annexed document. -----------------------------------------------------------------

IN WITNESS WHEREOF I have hereunto given my signature and affixed my seal at the City of
Salzburg, this 3.11.2009 (dritten November zweitausendneun) ----------------------------------------



*Certified Court Translator*



5 Cg 36/09d

*E.1*



REPUBLIK ÖSTERREICH
Landesgericht Salzburg

Rudolfsplatz 2
Postfach 522
A-5010 Salzburg
Tel. 05 7601 233

An das für

**112s 10 th street**

**Wilmington, nc 28401**

**Vereinigte Staaten von Amerika**

zuständige Gericht oder die

sonst zuständige Behörde

**RECHTSSACHE:**
**Kläger**
Elsa Weiss vertreten durch den
Sachwalter Erwin Wallinger
Obergäu 232
5440 Golling an der Salzach

**vertreten durch:**
Mag. Andreas WIMMER Rechts-
anwalt
Kuffergasse 1
5400 Hallein
Tel: 06245/88 6 44

**Beklagter**
Franz Schachl
geb. 11.09.1950
Markt 70
5441 Abtenau

**vertreten durch:**
Dr. Peter JESCH Rechtsanwalt
Reichenhallerstraße 5
5020 Salzburg
Tel: 0662/84 85 83-0

WEGEN:   114.194,00 EUR samt Anhang (Sonstiger Anspruch -
allgemeine Streitsache)

Das gefertigte Gericht ersucht um Rechtshilfe.

Beim Landesgericht Salzburg behängt ein Zivilrechtsstreit der Klägerin Elsa Weiss, vertreten durch den Sachwalter Erwin Wallinger, vertreten durch Mag. Andreas WIMMER Rechtsanwalt, wider den Beklagten Franz Schachl, vertreten durch Dr. Peter JESCH Rechtsanwalt, wegen € 114.194,00 samt Anhang.

Der Klägerin begehrt mit Klage vom 19.02.2009 von dem Beklagten die Bezahlung von 114.194,00 EUR und bringt vor:
Die Klägerin Elsa Weiss, geb. am 16.01.1922, sei die Verlassenschaft nach ihrem Ehemann Johann Weiss, der am 31.10.2006 verstorben war, eingeantwortet worden, wobei ihr ein Betrag von € 105.817,67 zugute gekommen sei.
Der Beklagte habe von der Klägerin eine Spezialvollmacht gehabt, die lediglich zur vollständigen Erledigung und Vertretung im Verlassenschaftsverfahren ausgestellt gewesen sei (Beilage ./D). Entgegen dieser Spezialvollmacht habe der Beklagte über diesen Betrag verfügt, indem er seinem Sohn bzw. dem Großneffen der Klägerin, Alexander Otto Schachl, ein Darlehen eigenmächtig, das heißt ohne Zustimmung und Genehmigung der Klägerin, in Höhe von 100.000,00 US-Dollar gewährt habe. Laut gegenständlichem Kreditvertrag seien Zinsen in Höhe von 6% p.a.; die Rückzahlbarkeit des Kapitals sei zum 15.12.2014, somit zu einem Zeitpunkt, in dem die Klägerin fast 93 Jahre alt sei, vereinbart gewesen Beilage ./C). Die Klägerin habe keinen Vorteil aus diesem Darlehen, da die Gefahr bestehe, dass sie den Endtermin nicht mehr erleben würde. Im Übrigen habe Alexander Schachl im Zuge des Kreditvertrages keinerlei Sicherheit gegeben und sei dies von dem Beklagten auch gar nicht verlangt worden, was bei der Höhe des Darlehens ungewöhnlich sei. Darüber hinaus sei mit der gewählten Form der Veranlagung durch den Beklagten ein völlig unkalkulierbares Währungsrisiko verbunden gewesen. Der Differenzbetrag zwischen US-Dollar 100.000,00 und dem Betrag von € 105.817,67 sei der Klägerin nie ausgehändigt worden. Aufgrund der

Verzinsung des Betrages seit 31.10.2006 sei ein Betrag in Höhe von € 114.194,00 - nach Aufforderung des Klagevertreters vom 20.10.2008 - per 30.10.2008 fällig gewesen, jedoch nicht bezahlt worden.

Der Beklagte bestreitet das Klagebegehren dem Grunde und der Höhe nach, beantragt Klagsabweisung und wendet ein, dass die Darlehensvergabe an den Großneffen der Klägerin auf ihren ausdrücklichen Wunsch erfolgt sei. Dadurch habe keinerlei Verpflichtung zur bestmöglichen Veranlagung von Geldbeträgen aus der Verlassenschaft bestanden. Da die Klägerin zu ihrem Großneffen zeitlebens immer eine enge Beziehung unterhalten habe, habe sie diesem eine Unterstützung zukommen lassen wollen, zumal auch eine bessere Verzinsung als auf inländischen Sparbüchern vereinbart gewesen sei.

Die von der Klägerin dem Beklagten am 24.04.2007 erteilte Spezialvollmacht habe diesen ausdrücklich ermächtigt, über Geld und Geldeswert der Klägerin zu verfügen.

Der Beklagte habe der Klägerin den Differenzbetrag in bar ausgefolgt.

Die Klägerin entgegnete hiezu, dass sie dem Beklagten keine Verfügungsgewalt über die aus dem Verlassenschaftsverfahren erhaltenen Beträge erteilt habe. Der Beklagte habe sich nach Abschluss des Verlassenschaftsverfahrens nicht mehr oft blicken lassen und habe sicherlich nicht über ihren ausdrücklichen Wunsch ihrem Großneffen diesen Kredit (ohne jegliche Sicherheiten und ohne Absicherung gegen allfällige Inflationsrisiken) gegeben. Die Klägerin habe kein enges Verhältnis zu ihrem Großneffen gehabt, zumal sie ihn lange Zeit vor der eigenmächtigen Kreditgewährung durch den Beklagten zuletzt gesehen habe. Obwohl Ende 2008 eine Zahlung hätte erfolgen sollen, habe Alexander Schachl nicht bezahlt.

Eine Genehmigung dieses Geschäftes erteile die Klägerin nicht. Der Differenzbetrag sei ihr nicht in bar ausbezahlt worden.

Schließlich fehle eine Gerichtsstandvereinbarung, sodass die Klage in den vereinigten Staaten von Amerika eingebracht werden müsste.

Es ergeht das höfliche **Ersuchen**,

**Alexander SCHACHL**

**112s 10 th street**

**Wilmington, nc 28401**

**U S A**

als Zeugen unter Zugrundelegung des obigen Parteienvorbringens nach Wahrheitserinnerung unter Beachtung des Beweisverbotes nach § 320 der österreichischen Zivilprozessordnung sowie unter Wahrung der dem Zeugen zustehenden Rechte nach den §§ 321 bis 323 der österreichischen Zivilprozessordnung unbeeidet zu der beiliegenden Fragenliste zu vernehmen.

Eine Abschrift der maßgeblichen Bestimmungen der österreichischen Zivilprozessordnung ist angeschlossen.

Es wird ersucht, nachstehende Parteienvertreter vom Vernehmungstermin zu verständigen, um ihnen eine Teilnahme an der Vernehmung zu ermöglichen:

1.) Mag. Andreas WIMMER Rechtsanwalt

Kuffergasse 1  5400 Hallein

Tel: 06245/88 6 44

2.) Dr. Peter JESCH Rechtsanwalt

Reichenhallerstraße 5

5020 Salzburg

Tel: 0662/84 85 83-0

Beilagen:

./A Fragenliste

./B Auszug der österreichischen Zivilprozessordnung

./C Kreditvertrag vom Mai 2007

./D Spezialvollmacht vom 24.04.2007


Für die Erledigung dieses Ersuchens wird im voraus gedankt.


Mit vorzüglicher Hochachtung


Landesgericht Salzburg

Abt. 5, am 14.10.2009

Dr. Helmut Zöttl

Richter des Landesgerichtes Salzburg

| Certified translation from the German language |
| --- |

5 Cg 36/09d

./A

REPUBLIC OF AUSTRIA
Superior Court Salzburg

## Questionnaire

regarding the questioning of the witness **Alexander SCHACHL,**

**112 S. 10th Street, Wilmington, NC 28401, United States of America:**

1) When have you last seen the plaintiff, ie. your aunt Elsa Weiss?

2) When have you last had contact with her?

3) How is your relationship with your aunt?

4) How did the loan request and the loan agreement subject to this action come about? What background was significant for you regarding the loan request?

5) What did the defendant, ie. your father, say to you regarding the granting of the loan request?

6) Did your father make any statements regarding any permission to grant the loan?

7) Did you know anything about a special power-of-attorney (Exhibit ./D) for your father? If so, did the defendant show it to you?

8) Did the defendant tell you that he was supposed to do with the money?

9) Who can confirm that the loan was granted at the specific request of your aunt?

10) What was agreed in the loan agreement? What was agreed regarding the type of repayment?

11) Why was such a long repayment period agreed – given the age of your aunt?

12) What repayment provisions were made in the event that your aunt should not live to see the repayment of the loan?

13) What type of securities have been agreed upon for the repayment of the loan?

14) Why did you not pay the interest due at the end of 2008?

15) If you have anything else to say regarding this court matter, which you did not make a statement about, then state so now explicitly.


Superior Court Salzburg

Dept. 5, dated 10-14-2009


[signature; illegible]

Dr. Helmut Zoettl

Judge

Superior Court Salzburg

---------------------------------------------------------------------------------------------------------

> **With reference to my official oath I herewith certify that the above is a true and correct translation of the annexed document.** ---------------------------------------------------------------------

IN WITNESS WHEREOF I have hereunto given my signature and affixed my seal at the City of Salzburg, this 3.11.2009 (this third day of November two thousand and nine)------------------------



**Certified Court Translator**



5 Cg 36/09d

./A

**Republik Österreich
Landesgericht Salzburg**

# Fragenliste

zur Vernehmung des Zeugen **Alexander SCHACHL**

**112s 10 th street,Wilmington, nc 28401,Vereinigte Staaten von Amerika**

1) Wann haben Sie die Klägerin bzw. ihre Tante Elsa Weiss zuletzt gesehen?

2) Wann hatten Sie zuletzt mit ihr Kontakt?

3) Wie ist ihr Verhältnis zu ihrer Tante?

4) Wie kam es zu der Darlehensaufnahme und zum gegenständlichen Kreditvertrag? Welche Hintergründe für die Darlehensaufnahme waren für sie ausschlaggebend?

5) Was hat ihnen der Beklagte bzw. ihr Vater im Zuge der Darlehensvergabe gesagt?

6) Hat der Vater Angaben zur einer etwaigen Erlaubnis zur Darlehensvergabe getätigt?

7) Haben Sie von einer Spezialvollmacht (Beilage ./D) ihres Vaters gewusst? Bejahendenfalls, hat der Beklagte Ihnen diese vorgezeigt?

8) Hat der Beklagte Ihnen mitgeteilt, was er mit den Geldbeträgen tun soll?

9) Wer kann bestätigen, dass die Darlehensvergabe auf ausdrücklichen Wunsch der Tante erfolgt ist?

10) Was wurde im Kreditvertrag vereinbart? Was ist betreffend die Art der Rückzahlung vereinbart?

11) Warum wurde angesichts des Alters Ihrer Tante eine so lange Laufzeit gewählt?

12) Welche Rückzahlungsregelungen wurden getroffen, falls die Tante den Rückzahlungstermin nicht erleben sollte?

13) Wurden  Sicherheiten zur Absicherung der Kreditrückzahlung vereinbart?

14) Wieso haben Sie  Ende 2008 die  fälligen Zinsen nicht an die Tante ausbezahlt?

15) Wenn Sie sonst noch etwas über die Streitfragen in diesem Prozess wissen, was sie noch nicht gesagt haben, so sagen sie es nun ausführlich.

Landesgericht Salzburg

Abt. 5, am 14.10.2009

Dr. Helmut Zöttl

Richter des Landesgerichtes Salzburg

## Austrian Code of Civil Procedure

### Examination of Witnesses

### § 289 of the Austrian Code of Civil Procedure

(1) The parties may be present when evidence is taken. They may direct those questions at witnesses and expert witnesses through the presiding judge or the judge conducting the taking of evidence or directly, with their consent, as they deem appropriate to clarify or complete testimony, as well as to clarify the circumstances of the litigious matter, or the circumstances that are essential for the probative weight of the testimony. The judge shall dismiss questions that he/she deems unreasonable.

(2) To the extent possible under the circumstances of a case, the taking of evidence shall proceed, although none of the contacted parties has appeared in court. However, the adjudicating court or the assigned or the requested judge – as long as the taking of evidence has not been competed – may admit the taking of supplementary evidence, whenever a party can establish with credibility that he/she did not appear in court due to an unforeseen event, as a result of which the evidence taken is incomplete to a large extent, and whenever the supplementary evidence may be taken without causing any major delay in the legal dispute.

### Evidence of a witness

### § 320 Code of Civil Procedure

The following persons must not be examined as witnesses:

1. Persons unable to communicate what they have seen or otherwise learned or who were unable, at the time to which their testimony is supposed to relate, to perceive the fact about which the evidence is to be taken;
2. Clergymen in regard to what has been confided to them in the course of confession or otherwise communicated to them under the seal of official secrecy in their capacity as clergymen;
3. Civil servants, if their statement would reveal an official secret they are in charge of, unless they are released from the obligation to observe secrecy by their superiors;
4. Mediators registered under the Civil-Law Mediation Act, Federal Law Gazette I No. 29/2003 with regard to knowledge that has come to their attention or knowledge in the course of a mediation.

### § 321 Code of Civil Procedure

(1) A Witness may refuse to testify on:

1. any question the answering of which could expose the witness, his spouse or a person, with whom the witness is related in straight line or up to second degree in the collateral line or related by marriage, or related by adoption, furthermore his foster-parents and foster-children, as well as a person in custody for or of the witness, to the jeopardy of criminal prosecution or would cause dishonour to him or the above – mentioned persons;
2. any question the answering of which might expose the witness or a person referred to in the preceding subparagraph to a direct financial disadvantage;
3. any facts about which the witness could not bear testimony without violating his legally recognized obligation to observe secrecy, unless he has been validly released from this obligation;
4. any confidential communications made to the witness in his capacity as a lawyer by his party;
4a. any information that was communicated to the witness in his capacity as an official or employee of a legally recognized Professional Representation, or a voluntary Professional Association entitled to sign collective labour agreements, by his party in relation to a matter of labour or social security law;
5. any question which the witness could not answer without disclosing a trade or business secret;
6. any question about the way the witness has exercised his right to vote in an election or another vote declared by law to be by secret ballot.

(2) In the cases listed in subparagraph 1 and 2 above, the witness may, with regard to the relatives referred to, refuse to testify even if the marital status on which the relationship is grounded no longer exists.

### § 322 Code of Civil Procedure

No witness may refuse to testify, on grounds that he might suffer a pecuniary disadvantage, about the conclusion and the object of a legal transaction regarding the conclusion of which he had acted as a witness to the document, further about facts which are related to matters of (matrimonial or other) property resulting from the family or marital relationship of the family members mentioned in sec. 321, subparagraph 1, and about births, marriages or deaths of such persons, and finally about actions, which the witness has taken in relation to the disputed legal relationship in his capacity as predecessor in title or a representative of one of the parties.

*Status: 01 November 2008*
*The translation was produced by a generally sworn and court-certified interpreter on behalf of the Austrian Federal Ministry of Justice.*

1

### § 323 Code of Civil Procedure

(1) A witness who wishes to refuse to testify generally or about individual questions must state the reasons for the refusal verbally or in writing before or in the course of the hearing at which he is to be examined as witness, and, if there is any objection, to furnish adequate proof of the validity of his grounds.

(2) In the first case the parties should be, if advisable, notified of the witness's refusal before the hearing at which the examination of witnesses shall take place.

## Examination

### § 339 Code of Civil Procedure

(1) Before the examination, the witness is to be informed on which questions he may refuse to testify (sec. 321).

*Status: 01 November 2008*
*The translation was produced by a generally sworn and court-certified interpreter on behalf of the Austrian Federal Ministry of Justice.*

2

## Auszug aus den Bestimmungen der österreichischen Zivilprozessordnung (ZPO) über den Beweis und die Beweisaufnahme

### Allgemeine Bestimmungen über den Beweis und die Beweisaufnahme

**§ 289.** (1) Die Parteien können bei der Beweisaufnahme zugegen sein; sie können an die Zeugen und Sachverständigen diejenigen Fragen durch den Vorsitzenden oder den die Beweisaufnahme leitenden Richter stellen lassen oder mit deren Zustimmung selbst stellen, welche sie zur Aufklärung oder Vervollständigung der Aussage, sowie zur Aufklärung des Streitverhältnisses oder der für die Beweiskraft der Aussage wesentlichen Verhältnisse für dienlich erachten. Fragen, welche dem Richter unangemessen erscheinen, hat er zurückzuweisen.

(2) Mit der Beweisaufnahme ist, soweit dies nach Lage der Sache geschehen kann, vorzugehen, wenn auch keine der verständigten Parteien erschienen ist. Es kann jedoch vom erkennenden Gerichte, oder, so lange die Beweisaufnahme noch nicht beendet ist, auch von dem beauftragten oder ersuchten Richter eine Ergänzung der Beweisaufnahme zugelassen werden, wenn die Partei glaubhaft macht, dass ihr durch ein unvorhergesehenes Ereignis verursachtes Nichterscheinen eine wesentliche Unvollständigkeit der Beweisaufnahme zur Folge hatte und wenn zugleich die Ergänzung der Beweisaufnahme ohne erhebliche Verzögerung des Rechtsstreites stattfinden kann.

### Beweis durch Zeugen

#### Unzulässigkeit und Verweigerung des Zeugnisses

**§ 2.0.** Als Zeugen dürfen nicht vernommen werden:

1. Personen, welche zur Mitteilung ihrer Wahrnehmungen unfähig sind, oder welche zur Zeit, auf welche sich ihre Aussage beziehen soll, zur Wahrnehmung der zu beweisenden Tatsache unfähig waren;

2. Geistliche in Ansehung dessen, was ihnen in der Beichte oder sonst unter dem Siegel geistlicher Amtsverschwiegenheit anvertraut wurde;

3. Staatsbeamte, wenn sie durch ihre Aussage das ihnen obliegende Amtsgeheimnis verletzen würden, insofern sie der Pflicht zur Geheimhaltung nicht durch ihre Vorgesetzten entbunden sind;

4. eingetragene Mediatoren nach dem Zivilrechts-Mediations-Gesetz, BGBl. I Nr. 29/2003, in Ansehung dessen, was ihnen im Rahmen der Mediation anvertraut oder sonst bekannt wurde.

**§ 321.** (1) Die Aussage darf von einem Zeugen verweigert werden:

1. über Fragen, deren Beantwortung dem Zeugen, seinem Ehegatten oder einer Person, mit welcher der Zeuge in gerader Linie oder in der Seitenlinie bis zum zweiten Grade verwandt oder verschwägert, oder mit welcher er durch Adoption verbunden ist, ferner seinen Pflegeeltern und Pflegekindern, sowie der mit der Obsorge für ihn betrauten Person, seinem Sachwalter oder seinem Pflegebefohlenen zur Schande gereichen oder die Gefahr strafgerichtlicher Verfolgung zuziehen würde;

2. über Fragen, deren Beantwortung dem Zeugen oder einer der in Z. 1 bezeichneten Personen einen unmittelbaren vermögensrechtlichen Nachtheil zuziehen würde;

3. in Bezug auf Tatsachen, über welche der Zeuge nicht würde aussagen können, ohne eine ihm obliegende staatlich anerkannte Pflicht zur Verschwiegenheit zu verletzen, insoferne er hievon nicht gültig entbunden wurde;

4. in Ansehung desjenigen, was dem Zeugen in seiner Eigenschaft als Rechtsanwalt von seiner Partei anvertraut wurde;

4a. in Ansehung dessen, was dem Zeugen in seiner Eigenschaft als Funktionär oder Arbeitnehmer einer gesetzlichen Interessenvertretung oder freiwilligen kollektivvertragsfähigen Berufsvereinigung von seiner Partei in einer Arbeits- oder Sozialrechtssache anvertraut wurde;

5. über Fragen, welche der Zeuge nicht würde beantworten können, ohne ein Kunst- oder Geschäftsgeheimnis zu offenbaren;

6. über die Frage, wie der Zeuge sein Wahlrecht oder Stimmrecht ausgeübt hat, wenn dessen Ausübung gesetzlich für geheim erklärt ist.

Diese Übersetzung erfolgte von einem allgemein beeideten und gerichtlich zertifizierten Dolmetscher im Auftrag des Bundesministeriums für Justiz der Republik Österreich

Stand: 1. Oktober 2008

(2) Die Aussage kann in den unter Z. 1 und 2 angegebenen Fällen mit Rücksicht auf die daselbst bezeichneten Angehörigen auch dann verweigert werden, wenn das eheliche Verhältnis, welches die Angehörigkeit begründet, nicht mehr besteht.

§ 322. Über Errichtung und Inhalt von Rechtsgeschäften, bei welchen der Zeuge als Urkundsperson beigezogen worden ist, über Tatsachen, welche die durch das Ehe- oder Familienverhältnis bedingten Vermögensangelegenheiten betreffen, über Geburten, Verheiratungen oder Sterbefälle der im §. 321 Z. 1, bezeichneten Angehörigen, endlich über Handlungen, welche der Zeuge in Betreff des streitigen Rechtsverhältnisses als Rechtsvorgänger oder Vertreter einer der Parteien vorgenommen hat, darf das Zeugnis wegen eines zu besorgenden vermögensrechtlichen Nachteiles nicht verweigert werden.

§ 323. (1) Ein Zeuge, welcher die Aussage ganz oder über einzelne Fragen verweigern will, hat die Gründe der Weigerung mündlich oder schriftlich vor der zu seiner Vernehmung bestimmten Tagsatzung oder bei dieser Tagsatzung selbst anzugeben, und wenn ein Widerspruch erfolgt, glaubhaft zu machen.

(2) Im ersteren Falle ist ein solches Vorbringen des Zeugen den Parteien, soweit tunlich, noch vor der zur Vernehmung bestimmten Tagsatzung bekannt zu geben.

### Vernehmung

§ 339. (1) Den Zeugen ist vor ihrer Vernehmung bekannt zu geben, über welche Fragen die Aussage von einem Zeugen verweigert werden darf (§ 321).

Diese Übersetzung erfolgte von einem allgemein beeideten und gerichtlich zertifizierten Dolmetscher im Auftrag des Bundesministeriums für Justiz der Republik Österreich

Stand: 1. Oktober 2008

| Certified translation from the German language |
|---|

./C

[Stamp:]
RECEIVED
08-26-2009
Miami, May 2007

### Loan Agreement

My father, Franz Karl Schachl, D-O-B 09-11-1950, hereby gives me, Alexander Otto Schachl, D-O-B 07-20-1978, on behalf of my aunt Ms. Elsa Weiss

USD 100,000.-.

This amount is subject to 6% p.a. interest, and the first interest payment is due at the end of 2008 (December). The interest shall be transferred annually to the account of Ms. Elsa Weiss at Raiffeisenbank Abtenau/Russbach.

The due-date of the loan is 12-15-2014.

Alexander Otto Schachl

[signature; illegible]

Franz Karl Schachl

[signature; illegible]

--------------------------------------------------------------------------------

With reference to my official oath I herewith certify that the above is a true and correct translation of the annexed document. -------------------------------------------------

IN WITNESS WHEREOF I have hereunto given my signature and affixed my seal at the City of Salzburg, this 3.11.2009 (this third day of November two thousand and nine)------------------------




Certified Court Translator



FR 11:49 FAX :17 869 848583 20    DR. JESCH/RAUWEITH    @011
Case 1:15-mc-22276-KMW   Document 1-4   Entered on FLSD Docket 06/16/2015   Page 24 of 28

Aug 08 10:51    SCHACHL HOLZ    0043524320174    S.1



EINGELANGT
2 6. Aug.

Miami, May 2007

# Kreditvertrag

Mein Vater, Franz Karl Schachl, geb. 11.09.1950, gibt mir, Alexander Otto
Schachl, geb. 20.07.1978, im Auftrag meiner Tante Frau Elsa Weiss

**100.000,- USD.**

Dieser Betrag wird mit 6% p.a. verzinst, wobei der erste Zins Ende 2008
(Dezember) fällig ist. Die Zinsen werden jährlich auf das Konto von Frau Elsa
Weiss auf der Raiffeisenbank Abtenau/Russbach überwiesen.

Die Fälligkeit des Kredites ist der **15.12.2014.**

Alexander Otto Schachl

Franz Karl Schachl

Certified translation from the German language

# SPECIAL POWER-OF-ATTORNEY

I (We), _____ Elsa WEISS, D-O-B 01-16-1922, a retired person,_____

_____ Markt 210, 5441 Abtenau

_____

_____

hereby grant Mr. Franz Karl SCHACHL, a saw mill factory owner,_____

_____ Markt 70, 5441 Abtenau

_____

_____

each separately on his own,_____

the right of representation in the probate proceedings **regarding my husband, Johann Florian WEISS, D-O-B 10-13-1924, who died on 10-31-2006 and who last resided at 5441 Abtenau, Markt 210.**

This power-of-attorney authorizes the completion of the probate proceedings, in particular:

1. to make conditional or unconditional inheritance acceptance statements, to represent during the compilation of the probate inventory, to prepare and execute a summary of all assets under penalty of perjury and a statement of payment of public fees, the statement regarding the execution of the estate and all other necessary statements required in these proceedings, the filing of applications of all kinds in these proceedings and of applications regarding any guardianship, trusteeship or curatorship proceedings connected thereto;

2. to refuse the acceptance of the inheritance;

3. to represent during any possible lease matters relating to these probate proceedings, such as notice of termination, accepting a notice of termination, opposing a notice of termination and representing before all authorities in accordance with the rental law.

4.    to file applications with public authorities, such as company register, property registry, etc. regarding these probate proceedings;

5.    to accept court rulings and decisions from authorities as well as filing of regular and special appeals of all kinds in these proceedings;

6.    to withdraw funds, payments-in-kind or other movable items from courts, authorities or whatever for persons, to issue property-registry related discharge notices and declarations, all of which relating to the above-mentioned probate proceedings.

7.    to represent before the probate court as well as representation before financial authorities and all other authorities of the state, the provinces and municipalities necessary in these probate proceedings.

This power-of-attorney may be transferred entirely or just partially to any third parties at any time.

_____ Abtenau ___, dated   04-24-2007 _____

[Signature:]   Weiss Elsa

-------------------------------------------------------------------------------------------------------------------

**With reference to my official oath I herewith certify that the above is a true and correct translation of the annexed document.** ---------------------------------------------------------------------------

IN WITNESS WHEREOF I have hereunto given my signature and affixed my seal at the City of Salzburg, this 3.11.2009 (this third day of November two thousand and nine)------------------------



*Certified Court Translator*



# SPEZIAL-VOLLMACHT

Ich (Wir) _____ Elsa WEISS, geb. 16.1.1922, Pensionistin,
Markt 210, 5441 Abtenau

erteile(n) hiemit Herrn _ Franz Karl SCHACHL, Sägewerksbesitzer,
Markt 70, 5441 Abtenau

und zwar jeder für sich allein,

In dem Verfahren zur Durchführung der Verlassenschaftsabhandlung nach meinem am 31.10.2006 in Abtenau verstorbenen, zuletzt in 5441 Abtenau, Markt 210, wohnhaften Ehegatten Johann Florian WEISS, geb. 13.10.1924
Vertretungsvollmacht

Diese Vollmacht berechtigt zur vollständigen Erledigung der Verlassenschaftsangelegenheit, insbesondere:

1. Zur Abgabe der bedingten oder unbedingten Erbserklärung, zur Vertretung bei der Errichtung des Verlassenschaftsinventars, zur Erstattung und Unterfertigung des eidesstättlichen Vermögensbekenntnisses und der Gebührenausweise, des Testamentserfüllungsausweises und aller sonstigen im Verfahren vorkommenden Ausweise, zur Einbringung von Anträgen aller Art in diesem Verfahren und zu Anträgen in einer allenfalls mit dieser Verlassenschaft im Zusammenhange stehenden Vormundschafts-, Pflegschafts- oder Kuratels-Angelegenheit.

2. Zur Ausschlagung der Erbschaft.

3. Zur Vertretung allfälliger, mit dieser Verlassenschaft im Zusammenhang stehenden Mietangelegenheiten, wie Kündigung, Entgegennahme von Kündigungen, Einwendungen gegen Kündigungen und Vertretung vor den im Mietengesetz vorgesehenen Behörden aller Art.

M. Trentsensky – Spezialvollmacht geb – s m – v. xx

4. Zur Antragstellung bei den Ämtern der öffentlichen Bücher, wie Handelsregister, Grundbuch, Landtafel usw. in diesem Verlassenschaftsverfahren.

5. Zur Empfangnahme von gerichtlichen Beschlüssen und behördlichen Entscheidungen sowie zur Einbringung von ordentlichen und außerordentlichen Rechtsmitteln aller Art in diesem Verfahren.

6. Zur Behebung von Geld, Geldeswert oder anderen beweglichen Sachen bei Gericht, Behörden, von was immer für Personen, zur Ausstellung von grundbücherlichen Löschungsquittungen und Erklärungen, alles in dem oben bezeichneten Verlassenschaftsverfahren.

7. Zur Vertretung vor dem Nachlaßgericht, sowie zu jeder in demselben Verlassenschaftsverfahren vor den Finanzbehörden und allen anderen Behörden des Staates, der Länder und Gemeinden notwendig gewordenen Vertretung.

Diese Vollmacht kann im ganzen oder auch nur teilweise jederzeit auf einen Dritten übertragen werden.


_Abtenau_ ........................... den   24. 04. 07


Weiss Elsa